IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ED DAIE, | | |
| | Plaintiff, | No. C 15-03813 WHA |
| v. | | |
| THE REED GROUP, LTD., INTEL CORPORATION, CLAIM APPEAL FIDUCIARY SERVICES, INC., and DOES 1–50, | | **ORDER DENYING MOTION TO DISMISS; DENYING AS MOOT MOTION RE VENUE, OR TRANSFER; ORDER TO REMAND** |
| | Defendants. | |

## INTRODUCTION

Plaintiff asserts a claim for intentional infliction of emotional distress arising from the denial of long-term disability benefits. Defendants move to dismiss or, in the alternative, to transfer venue. For the reasons stated below, defendants' motion to dismiss for failure to state a claim is **DENIED**. Defendants' motion to dismiss for improper venue or, in the alternative, to transfer venue is **DENIED AS MOOT**. For lack of removal jurisdiction, the action is now **REMANDED**.

## STATEMENT

Plaintiff Ed Daie is a former employee of defendant Intel Corporation and a resident of Arizona (Compl. ¶¶ 3–8, 21). Defendants are Intel Corporation, The Reed Group, Ltd., and Claim Appeal Fiduciary Services, Inc. Intel is incorporated in Delaware and headquartered in

1  California. Reed is incorporated and located in Colorado. CAFS is incorporated in Colorado
2  and headquartered in Georgia.
3      In 2012, plaintiff became unable to work due to medical disabilities (Compl. ¶¶ 26,
4  28–29). Plaintiff applied for and received short-term disability benefits from September 2012
5  to September 2013. That was the maximum duration to receive such benefits, so plaintiff then
6  applied for benefits under Intel's long-term disability plan. At all material times, Intel sponsored
7  the LTD plan, self-funded it, and hired Reed and CAFS as third-party administrators to handle
8  the claims and appeals.
9      In September 2013, Reed ruled plaintiff ineligible for Intel's LTD plan due to an absence
10 of "Objective Medical Findings" in plaintiff's claim file (Compl. ¶¶ 28–29).[*] Reed found no
11 showing of a medical condition or a combination of conditions precluding plaintiff from
12 returning to work at Intel. Plaintiff filed a first-level appeal of Reed's claim denial. Reed,
13 however, upheld its denial. Plaintiff requested a final-level appeal. On the same rationale,
14 CAFS upheld the denial.
15     Plaintiff now alleges that he was wrongfully denied LTD benefits under the policy and
16 that defendants repeatedly engaged in extreme and outrageous conduct with the aim of forcing
17 plaintiff to drop his claim and return to work (Compl. ¶¶ 33–34). This alleged misconduct
18 included, among other things, falsely accusing plaintiff of "lying" and "exaggerating" his
19 disability, and "repeatedly challenging" the plaintiff's "character and truthfulness." In addition,
20 defendants allegedly urged plaintiff to take experimental medications, induced plaintiff to
21 increase his medications, forced plaintiff "to undergo a litany of rigorous medical examinations
22 without considering their results," and pressured plaintiff "to engage in further medical testing
23 that it knew would cause . . . pain, emotional distress and anxiety."

---

[*] The LTD plan provided an extensive definition of "Objective Medical Findings" as "measurable, independently-observable abnormalities," which are supported by "standard medical diagnostic procedures." This definition included several non-exhaustive examples of such findings. Under this definition, "not all tests or test results" indicated functional limitations. In addition, this definition did not include "opinions based on the acceptance of subjective complaints." Abnormalities had to be "clearly recognizable as out of the range of normal for a healthy population" and the significance of an abnormality had to "be accepted by the medical community as diagnostic" of the disabling condition being asserted (Defs.' Mtn., Exh. 3 at 3).

Plaintiff filed a complaint in state court in San Francisco alleging intentional infliction of emotional distress. With the consent of all named defendants, Intel removed this action to federal court here in San Francisco on the basis of federal-question jurisdiction — asserting that plaintiff's claim is preempted by ERISA. Intel then filed the two current motions to dismiss and to transfer. This order follows full briefing and oral argument.

**ANALYSIS**

**1. ERISA PREEMPTION.**

Defendants move to dismiss plaintiff's claim for intentional infliction of emotional distress based on federal preemption under the Employee Retirement Income Security Act of 1974.

ERISA imposes two types of preemption: (1) complete preemption under Section 502(a), and (2) conflict preemption under Section 514(a). The difference between the two is critical to the issue of removal. If a state-law claim is completely preempted under Section 502(a), it may properly form the basis for removal under Sections 1441 and 1331. *See Marin General Hospital v. Modesto & Empire Traction Company*, 581 F.3d 941, 944–46 (9th Cir. 2009). Conflict preemption under Section 514(a) is merely a federal defense. *Id.* at 949. In other words, conflict preemption — without more — "does not convert a state claim into an action arising under federal law," and removal on this basis would be improper. *Metropolitan Life Insurance Co. v. Taylor*, 481 U.S. 58, 64 (1987); *see also Marin General Hospital*, 581 F.3d at 945.

The Supreme Court has held that a state-law claim is completely preempted by ERISA if: (1) an individual at some point in time could have brought the claim under ERISA Section 502(a)(1)(B), and (2) no other independent legal duty is implicated by a defendant's action. A state-law claim is only completely preempted if both prongs are satisfied. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 210 (2004).

**A. Prong One: This Claim Could Not Have Been Brought Under Section 502(a)(1)(B).**

ERISA Section 502(a)(1)(B) provides that a "participant or beneficiary" of an ERISA plan may bring a civil action "to recover benefits due to him under the terms of his plan, to

3

enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."

Here, plaintiff seeks damages associated with his claim for intentional infliction of emotional distress. This claim is based on allegations that involve harassing and oppressive conduct independent of the duties of administering an ERISA plan. Plaintiff's claim falls outside the scope of ERISA and could not have been brought under Section 502(a)(1)(B).

### B. Prong Two: Defendants' Alleged Conduct Implicates an Independent Legal Duty.

Defendants must show that "there is no other independent legal duty that is implicated by a defendant's actions." *Marin General Hospital*, 581 F.3d at 946. In other words, this order must determine whether plaintiff's claim for intentional infliction of emotional distress "relies on a legal duty that arises independently of ERISA" and that "would exist whether or not an ERISA plan existed." *Id*. at 950.

In *Dishman v. UNUM Life Insurance Co. of America*, 269 F.3d 974 (9th. Cir. 2001), plaintiff brought a claim for tortious invasion of privacy against his insurer. There, an insurance company hired investigators to investigate plaintiff's claim for disability benefits. The plaintiff alleged that these investigators invaded his privacy in order to obtain information about him — even going so far as to falsely impersonate a bank lender. *Id*. at 978. Our court of appeals held that no preemption existed when plaintiff's "tort claim [did] not depend on or derive from his claim for benefits in any meaningful way." *Id*. at 983. The court also found that the objective of Congress "was not to provide ERISA administrators with blanket immunity from garden variety torts which only peripherally impact daily plan administration." *Id*. at 984.

Following *Dishman*, Judge Jorge Solis in the Northern District of Texas held that a claim for intentional infliction of emotional distress based on alleged hostile conduct during an insurance investigation was not preempted by ERISA. *Barker v. The Hartford Life and Accident Insurance Co.*, No. 06-CV-1514, 2007 WL 2192298, at *1 (N.D. Texas, May 18, 2007). In *Barker*, the plaintiff alleged that the insurance investigators "attacked" his credibility, suggested he was lying about his illness and asked "belittling questions" in an "effort to 'shame [the plaintiff] into returning to work.'" *Id*. at *3. Judge Solis stated that the plaintiff had the

4

right to be "free from" such treatment and that such conduct "exists independently" of plaintiff's rights under ERISA. Moreover, "[i]f such claims were held to be preempted by ERISA, [plaintiff] would be subject to such treatment with no available recourse, and 'a plan administrator could investigate a claim in all manner of tortious ways with impunity.'" *Id*. at *4 (quoting *Dishman*, 269 F.3d at 984).

So too here. Our defendants' duty not to engage in the alleged tortious conduct existed independent of defendants' duties under the ERISA plan. Specifically, the complaint alleges such tortious conduct as falsely accusing plaintiff of "lying" about his disability, urging plaintiff to take experimental medications, inducing plaintiff to increase his medications, forcing plaintiff "to undergo a litany of rigorous medical examinations without considering their results," and pressuring plaintiff "to engage in further medical testing that it knew would cause . . . pain, emotional distress and anxiety." These allegations are based on events that involved harassing and oppressive conduct. Defendant's actions implicate an independent legal duty.

Defendants argue that plaintiff's claim must be preempted because it is an attempt to use an alternative enforcement mechanism to achieve the same ends provided by ERISA. Defendants cite *Bast v. Prudential Insurance Co. of America*, 150 F.3d 1003 (9th Cir. 1998), to support this proposition. There, a claim for emotional distress was preempted by ERISA because the claim arose from the defendant's failure to timely pay benefits. *Id.* at 1005–08. Here, plaintiff's claim for intentional infliction of emotional distress arises from alleged harassing and oppressive conduct beyond the denial of benefits. This claim is wholly independent of any duty or legal remedy under ERISA. In contrast to *Bast*, even without the denial of benefits our plaintiff would still have a claim for intentional infliction of emotional distress. Thus, *Bast* is distinguishable.

Defendants also cite *Davila*, 542 U.S. at 200, where a participant in, and beneficiary of, separate ERISA plans brought claims based on the plan administrators' decisions to deny benefits. Plaintiffs claimed the administrators failed "to exercise ordinary care in the handling of coverage decisions" under the Texas Health Care Liability Act because they denied coverage for treatment recommended by plaintiffs' physicians. *Id*. at 204–05. The Supreme Court held

5

that the plaintiffs "[brought] suit only to rectify a wrongful denial of benefits promised under ERISA-regulated plans, and [did] not attempt to remedy any violation of a legal duty independent of ERISA." *Id.* at 214. Accordingly, their claims were completely preempted. Not so here. Again, our plaintiff is seeking damages from defendants' harassing and oppressive conduct that existed wholly independent of whether or not the denial squared with the ERISA plan.

### 2. REMAND.

After a case is removed from state court, the federal district court must remand, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. 1447(c). Furthermore, the "burden of establishing federal jurisdiction is upon the party seeking removal . . . and the removal statute is strictly construed against removal jurisdiction." *Emrich v. Touche Ross & Co.*, 846 F.2d 1190, 1195 (9th Cir. 1988).

If a state-law claim is subject to complete preemption under the civil enforcement provision of ERISA Section 502(a), it may properly form the basis for removal under Sections 1441 and 1331. *Marin General Hospital*, 581 F.3d at 944–46. As discussed above, plaintiff's claim is not completely preempted.

Although there is complete diversity among the parties, removal on the basis of diversity is not permitted here because Intel, the removing party, is a citizen of California. 28 U.S.C. 1441(b)(2). Defendants did not invoke diversity as a basis for removal, and they concede that removal on the basis of diversity would have been improper (Defs.' Reply at 4–5). Thus, this Court lacks subject-matter jurisdiction over this action, and the action must be **REMANDED**.

### 3. ALL OTHER MOTIONS.

Defendants also filed a motion to dismiss for improper venue or, in the alternative, to transfer venue. Because the action is remanded to state court, defendants' other motion is **DENIED AS MOOT**.

6

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss is **DENIED**. Defendants' motion to dismiss for improper venue or, in the alternative, to transfer venue is **DENIED AS MOOT**. Because this order finds that federal jurisdiction is lacking, this action is **REMANDED** to the Superior Court of the State of California for the City and County of San Francisco.

**IT IS SO ORDERED.**

Dated: November 10, 2015.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE